**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

LEON CRUMBLIN                                                                                         PLAINTIFF

v.                                                    No. 5:14CV00271 JLH

ELBERT BENNETT, Vice Chancellor of
Student Affairs, University of Arkansas at
Pine Bluff, in his official and individual capacities;
and LAURENCE B. ALEXANDER, Chancellor,
University of Arkansas at Pine Bluff, in his
official and individual capacities                                                        DEFENDANTS

**OPINION AND ORDER**

Leon Crumblin was employed in the administration of the University of Arkansas at Pine

Bluff.  His employment was terminated in July of 2013 when he was sixty years of age.  He has

brought this action against Elbert Bennett, in his individual and official capacity as Vice Chancellor

of Student Affairs at the University of Arkansas at Pine Bluff, and Laurence Alexander, in his

individual and official capacity as Chancellor of the University of Arkansas at Pine Bluff, asserting

claims under Title I of the Americans with Disabilities Act, 42 U.S.C. § 12112(a); the Age

Discrimination Employment Act, 29 U.S.C. § 621 *et seq.*; the Arkansas Civil Rights Act, Ark. Code

Ann. § 16-123-101 *et seq.*; the Arkansas Age Discrimination Act, Ark. Code Ann. § 21–3-201, *et*

*seq.*; the first and fourteenth amendments of the United States Constitution; 42 U.S.C. § 1981[1]; and

42 U.S.C. § 1983.  Bennett and Alexander have moved for summary judgment on all claims.

Document #18.  Crumblin has responded and the defendants have replied.  Documents #25 and #29.

For the following reasons, the summary judgment motion is granted as to Crumblin's claims that

---

[1] Crumblin has withdrawn the section 1981 claim.  Document #28 at 58.

arise under federal law.  The Court declines to exercise supplemental jurisdiction over Crumblin's state-law claims.

**I.**

Crumblin became the University's Director of Recruitment in January of 1997.  Document #26.  From 2007 until his termination, Crumblin served as Dean of Student Life/Enrollment Management.  Document #18-3 at 2 and #25 at 124-37.  Seventy percent of his salary was funded through Title III Community Outreach and Student Service and the remainder through other University funds tied to the Dean of Student Life position.  *Id.*  The Title III program is funded by federal grants to eligible institutions to strengthen their academic programs.  Document #18-5 at 1 ¶ 3.  In this position, Crumblin reported to Bennett in Bennett's capacity as Administrative Coordinator of Student Affairs.  Document #18-3 at 1-2 ¶¶ 4-5.

As Dean of Student Life, Crumblin coordinated and provided oversight of student discipline and development of programs and services to enhance student life.  Document #18-7 at 1.  Crumblin prepared a document describing what each person on his budget, including himself, was responsible for doing.  Document #18-1 at 7.  The description he wrote of his job duties stated:

> Duties: Responsible for implementation of the University's Enrollment Management Plan.  This includes coordinating and integrating the enrollment and retention efforts of the entire UAPB community.  Responsible for achieving enrollment goals by exerting control over those institutional factors that shape the size and characteristics of the student body.  This includes activities associated with attracting and retaining students through community outreach, recruitment, and support programs and activities; increasing the graduation rate of satisfied and well-trained professionals; and forming an alumnus with allegiance, loyalty, and support to UAPB.

Document #18-7 at 2.  Crumblin's resume states that his "[p]rimary focus [was] on the recruitment, retention and graduation of students[.]"  Document #18-1 at 45.  He confirmed in his deposition that both these were accurate representations of his duties.  Document #18-1 at 7-10.  Crumblin

composed another document, entitled Proposal for Student Affairs Staffing, which recommended that the University hire a young male and female recruiter because younger persons could relate more effectively to potential students.  Document #25 at 152 and #29-1 at 4-6.

The University experienced increased enrollment until 2010.  In 2006 the enrollment was at 3,128; in 2007 at 3,200; in 2008 at 3,525; and in 2009 at 3,792.  Document #18-7 at 7.  Thereafter enrollment began to drop.  In 2010 the enrollment was at 3,428; in 2011 at 3,188; in 2012 at 2,828; and in 2013 at 2,615.  *Id.*  First-time freshman enrollment went from 977 in the fall of 2009 to 568 in the fall of 2013.  *Id.* at 8.  The declining enrollment concerned the campus staff.

When Bennett became Coordinator of Student Affairs in 2008 he attempted to reorganize the enrollment management office, but his plan was not implemented.  Document #18-3 at 2 ¶¶ 6, 7.  In February 2013 the Board of Trustees of the University nominated Laurence Alexander as Chancellor of the University.  Document #18-3 at 3 ¶ 9.  Alexander's official start date was July 1, 2013.  *Id.* Bennett discussed his plan and the declining enrollment with Alexander.  *Id.* at 3 ¶ 9; #18-2 at 17-30; and #18-4 at 9.  Following Alexander's becoming Chancellor, Crumblin's reorganization plan was implemented and, as a part of that plan, Crumblin was terminated in July of 2013.  Document #18-3 at 3 ¶ 10.  The Director of Recruitment was terminated at the same time.  *Id*. at ¶ 9.

According to Bennett, Crumblin was terminated based on three factors: the declining enrollment, the new Associate Vice Chancellor for Enrollment Management and Student Success was a higher level position than the one held by Crumblin, and Crumblin had been resistant to changing the responsibilities of the positions.  Documents #18-3 at 3 ¶¶ 9 and 11 and #18-4 at 9.

Crumblin contends that he was terminated because of his age and disability.  He also contends that his termination was due to Bennett's belief that Crumblin gathered the Student Affairs

staff together to discuss concerns with Bennett's performance with a view toward informing the Chancellor about these concerns. Document #25 at 252-54.

The University Faculty/Staff Handbook, citing Board of Trustees Policy 405.1 and 4, "provides that staff members and administrators may be terminated at any time upon the giving of notice, in writing, at least thirty days in advance of the date employment is to cease, or immediately for cause." Document #18-9 at 22. The handbook also provides that "[t]he annual review of each administrative officer shall serve as the basis for decisions relating to salary and continuation as an administrator." *Id.* at 25. Crumblin was an administrator, not a tenured faculty member. Document #18-1 at 17 and #18-9 at 15. Bennett did not perform annual reviews for nonclassified employees such as Crumblin. Document #25 at 356. Crumblin was provided with thirty days' notice of his termination pursuant to the University of Arkansas Board Policy 405.4 and the University's Handbook. Document #18-8 at 6.

Crumblin has had back pain that stemmed from his military service, and later he developed bad knees unrelated to his military service. Document #18-1 at 25-26. Crumblin says during a meeting in 2006 or 2007 he stood up and grimaced, and in response to Bennett's inquiry, Crumblin said that it was from a disability from the military or something to that effect. *Id.* at 22. The pain was akin to someone sitting for a long period of time and standing with a moan and groan. *Id.* at 22-23. Crumblin states he sometimes had to leave other meetings due to pain. *Id.* at 25. Bennett never prevented him from leaving. *Id.* In 2007 and 2009 Crumblin had surgery on his knees, using regular leave time. *Id.* at 26-27. Bennett knew that Crumblin had knee surgery but did not consider him disabled. Documents #18-2 at 20 and #18-3 at 3 ¶ 12. Crumblin never requested an accommodation for a disability. Documents #18-1 at 23-27 and #18-3 at 3 ¶ 12.

After Crumblin was terminated, Ralph Owens, Associate Dean of Student Activities, was appointed Interim Dean of Student Life.  Document #25 at 346.  Owens was forty-one years of age at the time.  Document #25 at 347.  Later, Dr. Linda Okiror, aged sixty-four at the time, became the Associate Vice Chancellor for Enrollment and Student Success.  Document #18-10 at 18.

Crumblin did not file a grievance through the University's grievance procedures.  Document #18-1 at 32.  Instead, on December 18, 2013, he filed a complaint with the Equal Employment Opportunity Commission, alleging that his termination was based on age and disability discrimination.  Document #18-1 at 40.  The EEOC was unable to conclude that there was discrimination and issued the right to sue letter on June 27, 2014.  Document #18-8 at 7.

## II.

A court should grant summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  The moving party bears the initial burden of demonstrating the absence of a genuine dispute for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).  If the moving party meets that burden, the nonmoving party must come forward with specific facts that establish a genuine dispute of material fact.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).  "There is no 'discrimination case exception' to the application of summary judgment, which is a useful tool to determine whether any case, including one alleging discrimination, merits a trial."  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc).  A genuine dispute of material fact is presented only if the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510,

91 L. Ed. 2d 202 (1986). The court must view the evidence in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences that can be drawn from the record. *Spencer v. Jackson Cnty. Mo.*, 738 F.3d 907, 911 (8th Cir. 2013). If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23, 106 S. Ct. at 2552.

## III.

### A. Sovereign Immunity with Respect to Crumblin's Section 1983, ADEA, and ADA Claims

A suit against a state official in his official capacity is a suit against the State, not the individual, and, therefore, is no different than a suit against the State itself. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989). The Eleventh Amendment makes an unconsenting State immune from suits brought in federal courts. *Edelman v. Jordan*, 415 U.S. 651, 662-63, 94 S. Ct. 1347, 1355, 39 L. Ed. 2d 662 (1974). Although Congress can abrogate the states' sovereign immunity under the fourteenth amendment, "[s]ection 1983 provides no cause of action against agents of the State acting in their official capacities[.]" *Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2012). While Congress attempted in the ADEA to abrogate the states' sovereign immunity, that attempt was invalid. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 92, 120 S. Ct. 631, 650, 145 L. Ed. 2d 522 (2000). Likewise, Congress attempted to abrogate the states' sovereign immunity as to Title I ADA claims, but that attempt was invalid. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 374, 121 S. Ct. 955, 967-68, 148 L. Ed. 2d 866 (2001); *see also Fabisch v. Univ. of Minn.*, 304 F.3d 797, 800 (8th Cir. 2002). In short, the University of Arkansas at Pine Bluff is an instrumentality of the State of Arkansas and as such

cannot be sued for monetary relief. *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007); *Univ. of Ark. for Med. Sciences v. Adams*, 354 Ark. 21, 24, 117 S.W.3d 588, 590 (2003).

Crumblin argues that the defendants waived the sovereign immunity defense because they waited until the "eleventh hour" to make the defense, but that is inaccurate: the defendants asserted the sovereign immunity defense in their answers. Documents #5 at 4 ¶ 23 and #16 at 5 ¶ 25. On similar facts, the Eighth Circuit held that the University did not waive the sovereign immunity defense by failing to assert it in a motion to dismiss. *See Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009). Crumblin's claims for monetary relief against Bennett and Alexander in their official capacities are barred by sovereign immunity.

Official capacity suits for prospective injunctive relief are not barred by the Eleventh Amendment. *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997). Here, however, Crumblin is not asking for reinstatement. Documents #15 at 13-14 and #28 at 47. Instead he requests monetary relief and an order directing the defendants to follow federal and state law and to remove any adverse employment information from his file. *Id.* Since Crumblin does not seek reinstatement, he would not be entitled to prospective relief directing the defendants to follow the law, and there is no plausible inference that he will be the victim of alleged misconduct in the future. *Griffith v. Pepmeyer*, No. 07-1130, 2007 WL 3407181, \*5 (C.D. Ill. Nov. 14, 2007) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) ("[T]he basic requisites of the issuance of equitable relief . . . [includes] the likelihood of substantial and immediate irreparable injury . . . ."). With regard to the personnel file, Crumblin's attorney and Bennett both stated there was nothing negative in

Crumblin's personnel file. Document #18-2 at 6. Thus there is no equitable relief that this Court can issue. Therefore, Crumblin's official capacity claims must be dismissed.[2]

**B.     Individual Capacity Claims Under the ADEA**

Bennett and Alexander, individually, were not Crumblin's employers, so under the ADEA they may not be held liable in their individual capacities. *See Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996) ("[T]he ADEA provides no basis for individual liability for supervisory employees."); *see also Drye v. Univ. of Ark. For Med. Sciences*, No. 4:09CV00922-JLH, 2011 WL 30097, *2 (E.D.Ark. Jan. 4, 2011).

**C.     Individual Capacity Claims Under the ADA**

Crumblin also brings a claim under Title I of the Americans with Disabilities Act against the defendants in their individual capacities. The Eighth Circuit has not specifically ruled on whether an individual who is not an employer can be liable under the ADA. In *Alsbrook v. City of Maumelle*, however, the Eighth Circuit held that under Title II of the ADA individuals cannot be sued in their individual capacities and also noted that three circuits have held that individuals who do not otherwise qualify as "employers" under the statutory definition cannot be liable under Title I. 184 F.3d 999, 1005 n. 8 (8th Cir. 1999) (citing *Butler v. City of Prairie Village*, 172 F.3d 736, 744 (10th Cir. 1999); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996); *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1280-82 (7th Cir. 1995)). At least two cases in the Eastern

---

[2] Crumblin also asserts that sovereign immunity does not apply here because there is an exception to sovereign immunity to enjoin ultra virus, bad faith, and arbitrary actions. Document #28 at 25. *See Camack v. Chalmers*, 284 Ark. 161, 163, 680 S.W.2d 689, 690 (Ark. 1984). As noted, Crumblin has no claim for injunctive relief. Furthermore, that exemption relates to state-law claims, and the Court will not exercise supplemental jurisdiction over Crumblin's state-law claims.

District of Arkansas have held that an individual who is not an employer cannot be liable under Title I of the ADA. *Craig v. Wingfield*, No. 4:05CV000791-JMM, 2007 WL 1219742, *3 (E.D. Ark. Apr. 25, 2007); *Morrow v. City of Jacksonville, Ark.*, 941 F. Supp. 816, 820 (E.D. Ark. 1996). Neither Alexander nor Bennett, individually, employed Crumblin. Therefore, they cannot be held individually liable under Title I of the ADA. Crumblin's ADA claims must be dismissed.

**D.      Section 1983 Claims Against the Defendants in Their Individual Capacities**

Crumblin asserts individual capacity claims against Bennett and Alexander under section 1983 for violation of his right to free speech under the first amendment and for violation of his procedural and substantive due process rights under the fourteenth amendment. The defendants argue that qualified immunity shields them from liability on these claims in their individual capacities. The qualified immunity defense is available to public officials in section 1983 actions. *Bartlett v. Fisher*, 972 F.2d 911, 914-15 (8th Cir. 1992). "Qualified immunity shields government officials from suit unless their conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Burnham v. Ianni*, 119 F.3d 668, 673 (8th Cir. 1997). Determining whether qualified immunity applies requires a three-pronged inquiry:

> (1) whether the plaintiffs have asserted a violation of a constitutional or statutory right; (2) if so, whether that right was clearly established at the time of the violation; and (3) whether, given the facts most favorable to the plaintiffs, there are no genuine issues of material fact as to whether a reasonable official would have known that the alleged action violated that right.

*Id.* at 673-74. Neither the first amendment claim nor the fourteenth amendment claims make it past the first prong of the inquiry.

### 1.     First Amendment Retaliation

To prevail on a claim of first amendment retaliation, Crumblin must show, "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Greenman v. Jessen*, 787 F.3d 882, 891 (8th Cir. 2015) (quoting *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014)). Crumblin's first amendment retaliation claim is based upon testimony by Carolyn Mills that Mary Jones came to her after Crumblin was fired and tearfully confessed that she felt responsible for Crumblin's termination because she had told Bennett that Crumblin had organized a group of employees to complain to the Chancellor regarding Bennett's job performance. Document #25 at 252-54. Jones denies that she had such a conversation with Mills. Document #29-1 at 9. Thus, the only evidence Crumblin has in support of his first amendment retaliation claim is hearsay: Mills' testimony as to what Jones told her out of court, which Crumblin offers for the truth of the matter asserted. *See* Fed. R. Evid. 801(c). Federal Rule of Civil Procedure 56(c)(4) provides that an affidavit or declaration used to support or oppose a motion for summary judgment must be based on personal knowledge and must state facts that would be admissible in evidence. Thus, hearsay evidence cannot be used by a nonmoving party to defeat a motion for summary judgment. *Jones v. McNeese*, 746 F.3d 887, 899 (8th Cir. 2014); *Brooks v. Tri-Systems, Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005). Therefore, Crumblin's first amendment claim must be dismissed.

### 2.     Due Process

Crumblin also claims that the termination of his employment violated his due process rights. "The requirements of procedural due process apply only to the deprivation of interests encompassed

by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, 92 S. Ct. 2701, 2705, 33 L. Ed. 2d 548 (1972). For an employee to have a protectable property interest in continued employment, there must be more than a unilateral expectation of continued employment; the employee "must, instead, have a legitimate claim of entitlement to it." *Id.* at 577, 92 S. Ct. at 2709. "Whether the employee had a legitimate claim of entitlement – and thus, a constitutionally protected property interest – depends on state law and the terms of his employment." *Mulvenon v. Greenwood*, 643 F.3d 653, 657 (8th Cir. 2011).

As noted above, Crumblin was an administrator, not a tenured member of the faculty, so, according to University policy, he could be terminated at any time with thirty days' notice, which is to say that his employment was at will. Under Arkansas law an at-will employee may be "fired for any reason, no reason, or even a morally wrong reason." *Ball v. Ark. Dep't of Cmty. Punishment*, 340 Ark. 424, 430, 10 S.W.3d 873, 877 (2000). The two exceptions to this rule are "(1) where an employee relies upon a personnel manual that contains *an express agreement* against termination except for cause; and (2) where the employment agreement contains a provision that the employee will not be discharged except for cause, even if the agreement has an unspecified term." *Id.* at 876 (emphasis in original). Crumblin cites provisions in the University handbook providing for annual performance evaluations and stating that the annual reviews shall form a basis for decisions relating to salary and continuation of employment. None of these provisions contain an express agreement that an administrator can only be terminated for cause. *Cf. Eddings v. City of Hot Springs, Ark.*, 323 F.3d 596, 601 (8th Cir. 2003) (a provision in a policy manual providing a review procedure does not give rise to an expectation of continued employment). Furthermore, the University handbook conspicuously states that it "is not intended to establish an employment contract of any kind or

duration, and is not a legal document." Document #18-9 at 2. Thus, the handbook does not create a contract of employment. *Woodson v. Whirlpool Corp.*, No. 2:07CV2048, 2008 WL 748401 at *6 (W.D. Ark. Mar. 18, 2008).

Crumblin also points to the Personnel Action Form as evidence of a property interest in his job. This form provides space for a recommendation for an employee's appointment, reappointment, termination, or the like, states a period of time for an appointment, states the position to which the employee is to be appointed, and states the employee's salary for the period of appointment. Documents #18-6 at 2 and #25 at 124-43. Gladys Benford, the University's Human Resources Director, testified that the form is a document kept in the personnel files and not provided to an employee; it is simply documentation of the authorization to pay the employee. Document #18-6 at 1. Additionally, she stated that the University has never considered such a form to be a contract. *Id.* Benford's testimony is consistent with the form, which is signed by University officials who approve the personnel action reflected in the form but not by the employee. That the form provides for terminating an employee (Document #25 at 124), as well as appointing or reappointing an employee, confirms Benford's testimony that the form documents a personnel action internally but is not a contract. The Personnel Action Form did not create a contract between Crumblin and the University.

Crumblin also argues that his substantive due process rights have been violated. "To state a substantive due process claim, [Crumblin] must allege that a government action was 'sufficiently outrageous' or 'truly irrational, that is, something more than . . . arbitrary, capricious, or in violation of state law." *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 628 (8th Cir. 2001). Conduct that shocks the conscience or offends judicial notions of fairness or human dignity also support a

substantive due process claim. *Id.* Crumblin has not presented evidence of conduct that meets the substantive due process standard.

Crumblin's section 1983 claims must be dismissed.

**E.      Crumblin's State-Law Claims**

Having disposed of Crumblin's claims that are based on federal law, the remaining claims are state-law claims over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. The Court may decline to exercise supplemental jurisdiction after dismissing all of the claims that arise under federal law. *Id.* § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S. Ct. 614, 619 n. 7, 98 L. Ed. 2d 720 (1988). The Eighth Circuit has said: "We stress the need to exercise judicial restraint and avoid state law issues wherever possible. We also recognize within principles of federalism the necessity to provide great deference and comity to state court forums to decide issues involving state law questions." *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990).

Crumblin's remaining claims allege that the officials of a state university failed to follow state law. These claims implicate the public policy of the State of Arkansas. They are, therefore, claims that should be addressed by the courts of the State of Arkansas, rather than the federal courts. Out of deference and comity to the state courts, the Court declines to exercise supplemental jurisdiction over Crumblin's state-law claims. *See Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 749 (8th Cir. 2009).

## CONCLUSION

The defendants' motion for summary judgment is GRANTED IN PART.  Document #18.

Summary judgment is entered in favor of the defendants on all of Leon Crumblin's claims that arise

under the laws and constitution of the United States.  The Court declines to exercise supplemental

jurisdiction over Crumblin's claims that arise under the State of Arkansas, so those claims are

dismissed without prejudice.

IT IS SO ORDERED this 22nd day of July, 2015.


_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE